Argued November 19, affirmed December 23, 1974, reconsideration
denied February 6, petition for review denied February 19, 1975

EMPLOYMENT DIVISION, *Petitioner, v.*
EDWARD HINES LUMBER CO., *Respondent.*
529 P2d 934

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for petitioner. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

*Harry S. Chandler,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

FOLEY, J.

On December 6, 1973, the state Employment Division notified Edward Hines Lumber Co., respondent, of a deficiency assessment for unemployment compensation taxes. The deficiency was assessed for payments made to Homer Mosley and four other men during July 1-September 30, 1973. Edward Hines Lumber Co. (hereafter Hines) requested a hearing, contending that the five individuals were not employes of Hines during this period, but that Mosley was an independent contractor and the four other individuals were employed by him. The hearings referee held for Hines, and set aside the deficiency assessment. The Employment Division seeks judicial review of the decision of the ref-

eree, contending that the referee's decision is not supported by reliable, probative, and substantial evidence. ORS 657.684.

The hearings referee set aside the deficiency assessment on the ground that the activities of Homer Mosley and his crew members complied with the provisions of ORS 657.040, which provides for the exclusion of certain services for pay from the assessment provisions.

██ ORS 657.040 provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the following criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in

carrying out his contractual obligations to his clients."

ORS 657.040 requires, as a prerequisite to exemption, that an individual be shown to be free from control of the employer; it must then be shown that the individual is either " 'customarily * * * engaged in an independently established business' " *or* "the individual fulfills the four criteria of ORS 657.040 (2)(b)." *Barger v. Morgan,* 13 Or App 111, 114-15, 507 P2d 821, Sup Ct *review denied* (1973). Where the facts are undisputed, the question whether a person is an employe within the meaning of ORS 657.040 is one of law. *Baker v. Cameron,* 240 Or 354, 401 P2d 691 (1965); *Barger v. Morgan,* supra. The facts in this case are basically undisputed, and are succinctly set forth in the findings of fact of the hearings referee, the pertinent portion of which reads:

"* * * Logs are obtained by [Hines] through contracts entered into with private persons or public agencies such as the U.S. Forest Service and Bureau of Land Management. Such contracts are for the acquisition of standing timber (trees) which [Hines] must fell, cut into suitable lengths (logs), skid to a loading area and then transport to its mill site at Hines. Although [Hines] does have and utilizes its own employes to fell and buck the timber, in certain instances (dictated chiefly by economy) it prefers to enter into cutting contracts with separate individuals. During the period of time in question (July 1, 1973 through September 29, 1973), [Hines] had three such contracts with Homer Mosley * * *. Mr. Mosley has been a timber faller since 1934, most of which time he has worked as an employe including for [Hines], and immediately prior to the entering into the aforementioned contracts with Bly Logging Company. The contracts entered into between [Hines] and Homer Mosley only required the latter to fall and

buck the timber into logs as a third party did the skidding and loading. [Mosley] was paid on the number of board ft. in a log. (So much per thousand.) Mr. Mosley employed four other individuals to help him carry out the terms of the cutting contracts. He also purchased a pickup truck, in addition to one he already had to transport his crew to the woods. He had fire tools, first aid kits, chain saws, fuel and axes as needed by his employes to do the work. He (Mosley) also engaged the services of a local CPA to assist him in setting up books and payroll records and to obtain the necessary employer identification numbers which were subsequently received from the Oregon Department of Revenue * * *, Oregon Workmen's Compensation Board (SAIF) * * * and FICA * * *. Although application was also made for an Employment Division Firm No., it was refused. Mr. Mosley had the sole right of control and direction over his employes, and the only restriction placed on them was that because [Hines] mill only operated Monday through Friday, they were only to work on those days. In the case of strikes or other such unusual circumstances, [Hines] could refuse to accept any logs from Mosley. Mr. Mosley maintained an office in his residence and set up a separate bank account for his business purposes. Although he (Mosley) did not advertise, have a separate business telephone or use business cards, none of the timber fallers or logging contractors in the area did such. Although Mr. Mosley had no cutting contracts with any other companies, such as the one entered into with [Hines], he did negotiate for such with Bly Logging, Wampler Logging, Smerski Logging and for others with [Hines]. The only inspection of the timber cutting sites by [Hines] was to assure itself of the general compliance with federal and state requirements and the timber sales contracts. When the auditor with the Employment Division made an investigation of this matter (as a result of Mosley's application for an employer's

account no.) he was only aware of one of the cutting contracts entered into."

■ The key figure in this case is Homer Mosley. If he falls within one of the exceptions provided for in ORS 657.040, then it follows that the persons he hired and supervised would be his employes and not the employes of Hines for purposes of the Employment Division Law. Hines exercised no control or direction over Mosley's performance of his services, both under his contract of service and in fact; inspecting work to insure compliance with contractual and regulatory requirements and requiring that work be carried out only on specified days of the week do not rise to the point of control or direction. The remaining question is whether Mosley falls within the parameters of subsection (2)(a) or subsection (2)(b) of ORS 657.040.

■ The requirement of ORS 657.040(2)(a) is a dual one: The occupation must be both "independently established" and "customarily" engaged in. *Kirkpatrick v. Peet,* 247 Or 204, 428 P2d 405 (1967); *Barger v. Morgan,* supra. This requirement is not met "if the continued existence of the enterprise depends upon its relationship with a particular employer." 247 Or, supra at 214. In the present case, it appears that Mosley was unsuccessful in carrying on his business after the completion of three contracts with Hines. It is true that he attempted to enter into other contracts; the fact that he failed to continue to engage in his enterprise tends to support the conclusion that the continued existence of his enterprise depended upon its relationship with Hines. At the very least, a contrary conclusion is not supported by the evidence.

■ We therefore turn to see whether Mosley fulfills the requirements of ORS 657.040 (2)(b). Mosley held

himself out as a contractor and employed four individuals to assist him in the actual performance of his services. He set about establishing his business in the fashion of a contractor, and engaged in discussions with others in seeking to do contracting work.

■ During the period of time in question, Mosley had three effective contracts. All were with Hines. The Employment Division argues that the "two or more effective contracts" required by ORS 657.040 (2)(b)(A) must be with different parties in order to effectuate the purpose of the statute. The statute does not so read. There is no suggestion in the record of any effort to circumvent the statute nor any evidence that these were other than good faith contracts between Mosley and Hines. We decline to read into the statute the requirement the state argues for.

The Employment Division concedes that Mosley is recognized by the Department of Revenue as an employer. The facts also make clear that Mosley furnished substantially all of the equipment, tools, and supplies necessary in carrying out his contractual obligations.

■ Therefore, the final issue is whether Mosley fulfills the requirements of ORS 657.040 (2)(b)(B). Because the area of Mosley's operation is largely rural, the timber companies and logging contractors who contract with fallers are generally familiar with the fallers available for such work. As a result, such contractors generally do not maintain separate business phones, business cards, or typical forms of advertising. In the circumstances of this case, then, "normal business practice" does not call for the utilization of such devices by faller-contractors.

ORS 657.040 (2)(b) outlines a number of criteria, among many, to be considered in determining whether a business is independently established. In the particular circumstances of this case, we do not think subsection (2)(b)(B) should be read literally so as to require a contractor to establish business practices which are not "normal" to his trade. Mosley did take additional steps to establish himself in business, including the hiring of a certified public accountant, establishing an office in his home, establishing a separate business banking account, and establishing appropriate accounts with the Internal Revenue Service and the State Accident Insurance Fund. These steps are consistent with contractor status and indicative of his independence. *See Michelet v. Morgan,* 11 Or App 79, 86-87, 501 P2d 984 (1972). We find that Mosley, by following the normal procedures of contractors in his line of work, fulfilled the requirements of ORS 657.040 (2)(b)(B) "as is customary in operating similar businesses."

We therefore hold that Mosley met the requirements of ORS 657.040 (1) and (2)(b). The decision of the referee is affirmed.