Argued June 18, affirmed August 9, reconsideration denied September 15, petition for review denied November 16, 1976

# M/V DARE II COMPANY, *Petitioner,*
## *v.*
# EMPLOYMENT DIVISION, *Respondent.*
## (CA 6018)
552 P2d 846

*M. Chapin Milbank,* Salem, argued the cause for petitioner. With him on the brief were Schlegel, Milbank, Wheeler & Jarman, Salem.

*John W. Burgess,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Langtry and Fort, Judges.

FORT, J.

## FORT, J.

Petitioner appeals from a referee's decision under ORS 657.683 which determined that it was an employer subject to the Employment Division Law and assessed it for employment taxes for 1973 and 1974 on captains and crews of its commercial fishing vessel. The issues are whether petitioner is an employer under the Act and, if so, whether it received adequate notice of the 1973 and 1974 assessments.

The referee made detailed findings of fact which are not challenged on appeal.[1]

[1]Pertinent portions of the Findings of Fact are as follows:

"(1) Plaintiff, M/V Dare II Company is an Oregon corporation operating the M/V Dare II, a 50-foot otter trawl motor fishing vessel. * * * (8) The M/V Dare II while at sea is operated by a captain and usually two crewmen. (9) During the first five months of 1973, the vessel was captained by George J. Easley and during the balance of the time in issue herein (through 1974) by Walter R. Wilson. * * * (13) Under their oral arrangement, plaintiff set up a bank account and gave the captain in charge a checkbook for his use in purchasing supplies such as fuel and ice for the vessel, groceries for himself and crew members, and taking care of the boat in general. (14) The funds for the bank account came from a 10 percent share of the proceeds from the sale of the catch after each trip. (15) The balance of the proceeds were divided 40 percent to plaintiff company, 50 percent to the captain who then divided up his share with the crew members. (16) The captain was responsible for acquiring the crew, and the members thereof were solely under his direction and control. (17) Neither the captain nor crew furnished any supplies, materials, tools or anything aboard the vessel other than their own time and labor. (18) Crewmen are hired by the captain on an oral agreement, and they continue to work until they are discharged or they quit on their own volition. (19) Although neither Captains Easley nor Wilson were restricted by plaintiff as to where they should fish or sell the catch, it was understood that the catch would be delivered to Winchester Bay Seafood Company at either Empire or Winchester Bay, Oregon. (20) In the case of Captain Wilson, there was a 'market order' between him and Winchester Bay Seafood Company which meant that the latter would accept anything in the catch without restriction unlike other fish companies who would not. (21) Upon the arrival of the M/V Dare II at the seafood company dock, or receiving station (the latter at Empire), the catch is unloaded, weighed and recorded on load sheets, one copy of which is sent to plaintiff. (22) The price for which the catch is sold is generally set by a Fishermen's Marketing Association. (23) Checks would be prepared and sent out every two weeks from Jefferson by plaintiff's bookkeeper to the captain of the vessel. (24) The crewmen's checks would be based on the percentage agreement made between the captain and each crew

■ Petitioner contends it is exempt from paying unemployment tax because the captain of its fishing vessel qualifies under the exemption granted by ORS 657.040 which provides:

"Services performed by an individual for remuneration are deemed to be employment subject to this chapter unless and until it is shown to the satisfaction of the administrator that:

"(1) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of service and in fact; and

"(2) (a) Such individual customarily is engaged in an independently established business of the same nature as that involved in the contract of service; or

"(b) Such individual holds himself out as a contractor and employs one or more individuals to assist in the actual performance of services and who meets the follow-

member. (25) A crew member could and many often did secure an advance on his share of the catch. (26) The owner of the boat also paid a fee to the Otter Trawl Commission (a division of the Department of Agriculture, State of Oregon) based on the value of the catch. (27) So long as the captain was on the vessel even while in port, he had complete charge thereof. (28) The oral agreement entered into between the captain and plaintiff allowed the former to quit any time he so desired, and by the same token, plaintiff could terminate the captain's service any time between voyages. (29) Although plaintiff had very little contact with the captain after entering into their oral agreement, the latter was able to call plaintiff's bookkeeper at Jefferson in regard to either money for the captain's account or for something that was needed for the boat if it was more than the account could handle. * * * (33) Plaintiff company makes the usual deductions from the pay of the captain and the crew members for federal income tax and social security purposes (see Wage and Tax Statements—1973, a part of Exhibit No. 12). (34) Although plaintiff paid federal and unemployment tax (FUTA) on the captain and crew members for the years, 1972, 1973 and 1974, such payments were made under protest, and refunds have been received by plaintiff for 1972 and 1973. (35) A number of the crew of the M/V Dare II have applied for and received unemployment insurance benefits from the Employment Division based in whole or in part on earnings received by them in 1973 and 1974 from plaintiff. (36) Neither of the two captains who were in command of plaintiff's vessel during the period of time in issue herein were recognized by the Department of Revenue as an employer. (37) A hearing was held on July 12, 1973, on an appeal by plaintiff from a Notice of Determination of the Employment Division finding plaintiff to have become a subject employer as of January 1, 1972. * * *"

ing criteria shall be deemed to have an independently established business:

"(A) The individual customarily has two or more effective contracts.

"(B) The individual as a normal business practice utilizes separate telephone service, business cards and engages in such commercial advertising as is customary in operating similar businesses.

"(C) The individual is recognized by the Department of Revenue as an employer.

"(D) The individual furnishes substantially all of the equipment, tools and supplies necessary in carrying out his contractual obligations to his clients."

ORS 657.683(4) places the burden of proof on petitioner. *Barger v. Morgan,* 13 Or App 111, 114, 507 P2d 821, Sup Ct *review denied* (1973).

The referee determined that the boat captain met the test of independence from control of ORS 657.040(1). That finding is not challenged. For the petitioner to be exempt the captain must also meet the requirements of either ORS 657.040(2)(a) or (2)(b).

The captain of petitioner's fishing boat does not meet the requirements of ORS 657.040(2)(b). He did employ one or more persons, but did not have two or more effective contracts, did not engage in business practices typical of an independent business, was not recognized as an employer by the Department of Revenue, and did not furnish equipment or tools.

The captain also does not meet the requirements of ORS 657.040(2)(a). Both captains employed by petitioner were customarily engaged in captaining fishing vessels, but neither had an independent business while working for petitioner. To be exempt under the statute the individual must be an entrepreneur, having an investment of risk capital and performing services for more than one person. Such an entrepreneur would generally have a separate establishment, contract to perform specific pieces of work, perform services under his own name, and have a going

[ 401 ]

business which he could sell to another. *Kirkpatrick v. Peet,* 247 Or 204, 212-14, 428 P2d 405 (1967). He must have an enterprise separate from the relationship with a specific employer which will survive the termination of a particular contract so that the loss of a particular customer will not leave the individual unemployed. *Baker v. Cameron,* 240 Or 354, 365-66, 401 P2d 691 (1965).

While these requirements are flexible, the critical element is that the individual have an independent business. The captains described in the findings of fact had skills which made them valuable to boat owners, but they were not entrepreneurs with investments at stake. If, as petitioner claimed, they were unlikely to become unemployed, it was because jobs were plentiful and not because they had established independent enterprises.

The legislative history of portions of the Employment Division Law supports this result. Prior to January 1972, ORS 657.056(4) provided as follows:

" 'Employment' shall not include services performed by an individual as an officer or member of the crew of a vessel under an employment contract by the terms of which such individual's compensation or losses depend upon the value of the catch of the vessel upon which such individual serves."

The repeal of this section by Oregon Laws 1971, ch 463, § 8, p 738, indicates a legislative intent that both captains and crew members of fishing vessels be considered employes covered by unemployment compensation. Their employer, the boat owner, would then be subject to assessment for employment taxes.

We hold that the referee was correct in his determination that the captains were not exempt under ORS 657.040 and that they were employes of petitioner, who was subject to the Employment Division Law. Since the captains were employes of petitioner, the crew members were also petitioner's employes under ORS 657.025(2).

■ Petitioner contends that it is exempt from paying unemployment taxes under ORS 657.045 because it is harvesting an agricultural commodity. In particular petitioner points to ORS 657.045(2)(c) which exempts as agricultural labor all services performed

> "[i]n connection with the production or harvesting of any commodity defined as an agricultural commodity in section 15(g) of the Federal Agricultural Marketing Act, as amended * * *."

In *Lenhardt Airpark v. Employment Div.*, 24 Or App 145, 544 P2d 622, Sup Ct *review denied* (1976), we determined that the only agricultural commodity defined in section 15(g) of the Federal Agricultural Marketing Act, 12 USC § 1141j(g) (1970), was gum crops produced from trees. Neither this nor any of the other subsections of ORS 657.045 apply to petitioner's situation.

■ Petitioner first received notice of his liability as an employer and of his assessment for the years 1973 and 1974 in February 1975. He contends that he is not liable for taxes for those years since he did not receive notice by November 15 of each year. He relies on ORS 657.485(1), which provides:

> "The administrator shall promptly notify each employer not later than November 15 of each year of his rate of contributions as determined pursuant to this chapter."

The statute on which petitioner relies describes the procedure by which respondent is to notify an employer of the rate at which he will be assessed. After the first year of coverage the rate is based on the history of benefits paid to employes of that employer. ORS 657.430. A standard rate is provided for employers covered for less than one year. ORS 657.435.

In this proceeding, however, petitioner is contesting not the rate, but the determination that he is an employer subject to the Law as well as the assessments for contributions under the Law. ORS 657.683. ORS

657.679 provides for notice by the division to an employer that the employer is subject to the Law, and ORS 657.681 provides that the respondent may assess employer contributions when the employer has filed a report without paying contributions or when he has not filed at all when required to do so by the division. No time limit is prescribed in either statute. Our attention has been directed to nothing in the statutes, and we find nothing, which prevents the division from making the determination and the assessment for 1973 and 1974 at the time that it did.

We find that the purpose of ORS 657.485(1) is to provide an employer with notice that it is to be charged at a rate higher than the base rate. Since petitioner was not notified of a higher rate by November 15 of the years in question, as required by ORS 657.485(1), we conclude that respondent may not assess it for 1973 and 1974 taxes at a rate higher than that provided by law for first year employers.

Petitioner also contends that the referee's determination that for 1972 it was not an employer under the Law is res judicata and, unless either the facts or law has changed, is binding on respondent, at least if petitioner has not been given advance notice of the change. In *Willamette View Manor v. Peet,* 252 Or 142, 448 P2d 546 (1968), the court held that under ORS 657.683(2) the Employment Division could deny an employer a new hearing on an issue determined after a hearing five years before. The court stated that "[t]he doctrine of *res judicata* was foreign to administrative law in its beginnings, but recent decisions reveal a trend toward finality of decision." 252 Or at 144.

In 2 K. Davis, Administrative Law Treatise 566, § 18.03 (1958), the author, in discussing when res judicata is appropriate for administrative decisions, states:

"The desire for repose on which res judicata rests relates primarily to findings of fact; repose on lively problems of law may even be affirmatively objection-

[ 404 ]

able. A tribunal ought not to be barred from using trial-and-error methods of feeling its way into an undeveloped frontier of law and policy. Even when the principle of res judicata should be rigidly applied to findings of fact, some relaxation of its application to rulings of law may be indicated. Many factors may argue against conclusive effect of an administrative decision of a question of law—the function may be somewhat nonjudicial, law and policy may be in a state of flux, substantive reasons may require that the agency's authority to protect the public interest should remain unfettered, the administrative procedure may not have been geared to a careful consideration of the question of law, the agency may have been poorly staffed for deciding the question, or the legislative intent may have been that the agency's decisions of law should not be binding."

In *Holmes v. State Ind. Acc. Com.,* 227 Or 562, 575, 362 P2d 371, 363 P2d 563 (1961), the Oregon Supreme Court quoted a portion of the following statement from 2 K. Davis, *supra,* § 1812 at 625-26:

"* * * The reasons behind the doctrine [of res judicata] as developed in the court system are fully applicable to some administrative proceedings, partially applicable to some, and not at all applicable to others. As a matter of principle, therefore, the doctrine should be applied to some administrative proceedings, modified for some, and rejected for others. * * *

"Although any particular decision must be held either binding or not binding, the choice is not between taking all or none of the traditional doctrine of res judicata; the doctrine may be relaxed or qualified in any desired degree without destroying its essential service. The doctrine is at its best as applied to an adjudication of past facts; it is relaxed as applied to issues of law or policy involving continuing practices; it has no application to nonjudicial administrative action. The doctrine should be applied to avoid the freezing of administrative policies, while at the same time preventing unnecessary relitigation of the same claims or issues. In a great many cases the courts have applied a relaxed doctrine of res judicata to administrative action. Reasons for relaxing the doctrine include changing law, changing policy, changing facts, strong public interest in avoiding per-

petuation of error or undesirable policy in some concrete contexts, need for equal treatment of parties whose circumstances are the same, and other subtle or complex factors in various combinations."

*See also:* 2 *K. Davis, supra,* ch 18; 2 K. Davis, Administrative Law Treatise, ch 18 (Supp 1970).

■ In applying these rules to the present case we consider the following information. The relevant facts being undisputed, the issue whether petitioner was an employer under the Employment Division Law is an issue of law. *Employment Div. v. Edw. Hines Lbr.,* 19 Or App 866, 870, 529 P2d 934 (1974), Sup Ct *review denied* (1975). Prior to 1972, ORS 657.056(4) excluded crew members of fishing vessels from mandatory coverage under the Employment Division Law. The statute was repealed by Oregon Laws 1971, ch 463, § 8, p 738. Respondent then attempted to determine how to classify fishing boat crew members. In a hearing concerning petitioner it held that a captain was not an employe under ORS 657.040. In a later hearing on the question whether petitioner's captain was an employer of crew members, it decided that he was not. The conflicting decisions left the law and policy in this area unclear and left fishermen not covered by unemployment compensation.

■ We conclude that this has been an area of developing law and policy, that there is a public interest in resolving this question so that fishing boat crew members and captains who are employes of owners and operators of such vessels will be covered, and that this is an appropriate case to relax the application of res judicata.

Affirmed.